(Decided July 29th, 1859.)

---

## SAMUEL F. MARTIN *vs.* DAVID M. GOOD.

A paper containing the terms of settlement between two partners, by which each was to take certain specified accounts of the firm and pay certain spe-

cified debts, was placed in the hands of a witness to refresh his memory. The witness recognized the paper as in *his handwriting*, but did not remember where or when he wrote it, though he thought it was on the day of the settlement, and it must have been within a week thereafter. His memory *was not so refreshed*, by reading the paper, as to enable him to recollect the amount of accounts taken or the particular debts assumed by each partner, but from the fact of its being *in his handwriting*, he had no doubt it did contain the true terms of the agreement made in his presence, and each and all the terms of the contract, as stated in this paper, being read to the witness, he answered as to each, he had no doubt it was part of the agreement made between the parties in his presence. HELD: That this evidence was properly received.

Where the writing is neither recognized by the witness as one which he remembers to have seen before, nor awakens his memory to the recollection of anything contained in it, but, nevertheless, knowing the writing to be genuine, his mind is so convinced that he is, on that ground, enabled to swear positively to the fact, the testimony will be received.

Evidence that the general reputation of the plaintiff among his neighbors was that he was a tricky man, and would take liberties with paper in his hands, thereby altering its character, is not sufficient to prove that he had perpetrated a fraud on the defendant, nor is it, when followed by testimony, showing that the note given in evidence had been altered, sufficient or admissible to prove *forgery* or *alteration* of the note by the plaintiff.

Two partners settled their business, each agreeing to take certain accounts and pay certain debts of the firm. One of them, on being compelled to pay a debt which the other had so agreed to pay, brought suit on this agreement. HELD:

That it was not a condition precedent to the plaintiff's right to recover, that *he* should prove he had paid all the debts which *he* had assumed by the agreement.

The addition of the word "*and*" between the signatures of two parties to a sealed note, does not change their liabilities on it.

APPEAL from the Circuit Court for Baltimore county.

*Assumpsit* brought on the 13th of December 1855, by the appellee against the appellant. Plea, *non assumpsit*, with leave to the plaintiff to offer any evidence which would be competent and proper, if there were counts in the declaration on the agreement stated to have been made between the parties in the following paper, which was filed in the case before the trial:

"Articles of agreement made 1st of September 1847, between David M. Good and Samuel F. Martin, partners, of the

firm of Good & Martin, both of Washington county, State of Maryland: Whereas, the firm has been dissolved for some time and the business remains in an unsettled state, the partners have this day come to a conclusion to divide the assets of the firm and close the business. And as the parties are desirous of having a statement and condition, and considerations on which said business has been closed, and with a view of avoiding all misunderstanding in relation to the matter, we do hereby state such agreement and consideration to be, that the said David M. Good agrees, on his part, to pay sundry judgments in favor of John H. Duvall & Co., Jacob Albert, J. W. Curley & Co., Powles, Hyde & Wallis, Marriott, Marye & Co., out of his own private funds, and, in consideration of which, the said Good agrees to take the accounts in favor of Good & Martin, contained in a list in folios 482, 483, 484, amounting to $1066.19, and make out of them what he can, and apply them to his own private use. The said Samuel F. Martin, on his part, agrees to pay an account in favor of Heiser & Dougherty, an account in favor of Martin & Kemp, and a note in favor of widow Martin, out of his own private funds, and, in consideration of which, the said Martin agrees to take the accounts in favor of Good & Martin, contained in a list on folios 477, 478, 479, amounting to $1494.69, and make out of them what he can, and apply them to his own private use."

1*st Exception*. The plaintiff proved by Lantz, a competent witness, that he had known the plaintiff and defendant for a long time, and was acquainted with the handwriting of each of them, and that the signatures to the following note, shown to him and offered in evidence by the plaintiff, were the genuine signatures of the plaintiff and defendant respectively:

"$450. Twelve months after date we promise to pay to the order of Barbara Martin, four hundred and fifty dollars, with interest for value received. Witness, our seal and signature, this 29th day of January 1846.

D. M. Good,        (Seal.)
and
Sam'l F. Martin,   (Seal.)"

Martin vs. Good.

This witness further proved that the plaintiff and defendant in 1846 and 1847, were partners in trade in the town of Lei-tersburg, Washington county, and, about that time, dissolved partnership. Witness was clerk of the firm while it existed under the name of Good & Martin. Barbara Martin, the payee of the above note, was a widow and the mother of the defendant, and witness knew of no other debt due by the firm to her. Some time after the partnership business had been discontinued, witness was present at a settlement between the plaintiff and the defendant at their store, when it was agreed that the accounts due the firm should be divided into two por-tions, and each partner should take one for his own use and should pay certain debts due by the firm. Witness made out the accounts. They were divided into two parcels, and each partner actually took and received the parcel allotted to him under their agreement. Witness cannot now remember what was the amount of the accounts taken by each partner, or whom the accounts were against, nor what were the debts which each assumed to pay, and being asked whether the above note was one of the debts agreed to be paid by Martin, says he has no recollection of it. The plaintiff's counsel then showed the witness the paper above stated and filed in the case, for the purpose of refreshing the recollection of the wit-ness, and asked him if that paper was in his handwriting, and if so, whether it contained a correct statement of the agreement between the plaintiff and defendant? to which witness an-swered that it was in his handwriting, but he had no recollec-tion of the paper, and if it had not been shown, he should not have known that it had ever been written; he does not remem-ber when or where he wrote it, but he believes it was written in the store; or whether it was on the day of the settlement or a week afterwards; he thinks it was on the day; it must have been within a week; he does not remember how he came to draw it, or who asked him to draw it, whether Good or Mar-tin, or both, or either of them, but he could not have been in-duced to put in it anything which he knew to be wrong or was not part of the agreement as he understood it; if either Good or Martin had asked him to draw it he would have done

so, and he does not know that Martin knew anything about it; witness was about eighteen or nineteen years of age at the time, but he is sure he would not have drawn it if he had not thought it was right; he has no doubt the paper contains a correct statement of the terms of the agreement, as he was present when the agreement was entered into, and the paper was written about that time, and he is sure he would not have stated anything in the paper he did not believe to be true. The witness also stated, in reply to a question by the plaintiff's counsel, that his memory was not refreshed by reading the paper, so as to enable him to recollect the amount of accounts taken, or the particular debts assumed by each partner. He was then asked by the plaintiff's counsel whether he had any doubt that the terms stated in this paper, in reference to the accounts to be taken and the debts to be paid by each partner, were the terms of the agreement which was made in his presence, as testified to by him? to which he replied that he had no recollection of the particular accounts to be taken and the debts to be paid by each partner, but from the paper being in his handwriting, he had no doubt it did contain the true terms of the agreement made in his presence.    The plaintiff's counsel, *after objection being made by the defendant's counsel to this mode of examination and kind of proof*, then read over in detail to the witness each and all the terms of the contract, as stated in this paper, and asked him, as to each, if he had any doubt whether that was part of the agreement made between the parties in his presence, and he replied, as to each, that he had no doubt it was, although, at the time of testifying, he had no recollection of the particular accounts to be taken or of the particular debts to be paid by each; and, upon cross-examination, being asked whether, in his conscience, and on the oath he had sworn, he was prepared to say, that the contents of the paper truly stated the agreement he had heard between the parties? said that he was prepared to swear that the paper contained the agreement as he understood it.    The court (PRICE, J.) overruled the objection of the defendant's counsel, and allowed the testimony of the witness so taken to be given to the jury for the purpose of prov-

Martin *vs.* Good.

ing the contract sued on in this case. To this decision the defendant excepted.

*2nd Exception.* The plaintiff then offered in evidence the record of a suit against him by the administrators of Barbara Martin, on the note above mentioned, in the Circuit court for Washington county, showing the recovery of judgment against him and the payment thereof under execution issued thereon. The defendant then proved by the same witness, Lantz, that whilst the plaintiff and defendant were carrying on their business as merchants, they usually signed notes given by them as partners, in the name of the partnership, Good & Martin; that Good was a sharp and intelligent merchant, and that the word *"and,"* opposite the signature to the note offered in evidence, was in the handwriting of Good, as well as the body of the note. The defendant then, by his counsel, offered to prove by this witness that the general reputation of Good among his neighbors was, that he was a tricky man and would take liberties with paper in his hands, thereby altering its character, the counsel stating that this proof was offered to show that the witness might have been imposed on, and he should follow up this testimony by further proof tending to show that the note given in evidence in this case had been altered. The court refused to allow any of the testimony so offered to be given to the jury, and to this ruling the defendant excepted.

*3rd Exception.* The defendant then proved by a son of Barbara Martin, the payee of the note offered in evidence, and who lived with her for several years before her death, and attended to her business, that, during that time, he repeatedly saw this note, and is certain that the word *"and"* was not opposite the signatures at that time, and has been put to it since. Upon all the testimony the defendant then asked the following instructions:

1st. If the jury shall believe that the note given to Mrs. Martin, and offered in evidence in this case, was given for the individual debt of Good, the plaintiff is not entitled to recover, unless they shall believe, from the proof in the cause, that the defendant subsequently agreed to pay the same.

2nd. If the jury shall believe the note in favor of Mrs. Mar-

tin was a partnership transaction, they must find for the defendant, unless they shall be satisfied from the evidence that the affairs of the partnership have been finally settled, and that Martin agreed to pay the same.

3rd. The plaintiff is not entitled to recover in this case, on the special contract, unless he proves the whole of the special contract, and in the absence of proof as to the claims contained in folios 482, 483, 484, and in folios 477, 478, 479, the whole of said contract is not proved, and the plaintiff is not entitled to recover.

4th. If the jury shall believe that the special contract in this case has been sufficiently proved by the plaintiff, it is an entire contract, and the plaintiff is not entitled to recover unless he proves that he has performed all on his part to be performed.

5th. If the jury shall believe that the note to Mrs. Martin has been altered by Good for the purpose of changing the character of said note, and making it a note to bind the partnership, he is not entitled to have any recovery for any part of the same.

The court granted the second prayer and refused the others, and to this refusal the defendant excepted. The verdict and judgment were in favor of the plaintiff for $772.41 damages and costs, and the defendant appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*Jervis Spencer*, for the appellant, argued:

1st. That the evidence of Lantz, to prove the special contract sued on this case, was incompetent and inadmissible, and ought to have been rejected. The memory of the witness was not refreshed by reading the paper, and he says that, independently of the paper, he knows nothing of the matters contained in it. The rule of evidence in such cases is stated in 1 *Phillip's Ev.*, 209: "A witness can depose only to such facts as are within his own recollection. But to assist his memory he may use a written entry or memorandum, or the copy of a memorandum; and if afterwards he can positively

swear to the truth of the fact there stated, such evidence will be sufficient. But if he cannot, from recollection, speak to the fact any further than as finding it stated in a written entry, his testimony will amount to nothing." The same rule is stated in 1 *Starkie on Ev.*, 154, 155. See also on this point, *Cowen & Hill's Notes* to *Phillips, note* 377, *page* 412, in 4 *Phillips, (3rd Ed.,)* 730; 1 *Phillips, (3rd Ed.,)* 419; 3 *Wash. C. C. Rep.*, 109, *Richardson vs. Golden.* 4 *Harrington*, 265, *Redden vs. Spruance, et al.;* 3 *Ala.*, 100, *Vastbinder vs. Metcalf;* 11 *Wend.*, 485, *Feeter vs. Heath;* 1 *A. K. Marshall*, 188, *Owings vs. Shannon;* 1 *Richardson*, 234, *O'Neale vs. Walton;* 4 *Ala.*, 46, *Langford vs. Cummings, et al.* 4 *Littell*, 338, *Key vs. Lynn;* 6 *Pick.*, 222, *Glover vs. Hunnewell;* 5 *Wend.*, 301, *Lawrence vs. Barker;* 16 *Maine*, 248, *Clark vs. Bigelow;* 3 *Md. Rep.*, 269, *Lewis vs. Kramer, et al.;* 11 *Md. Rep.*, 276, *Howard vs. Carpenter.*

2nd. The rebutting evidence of Lantz, on his examination by the defendant, ought to have been admitted. The evidence, that the appellee was a tricky man, was important in association with the previous testimony of the witness, to show that the witness had been imposed upon by him, and that the written memorandum shown was a contrivance of his. That he was a tricky man and would *take liberties with paper in his hands, thereby altering its character,* was also important in association with the testimony of the witness, Martin, to sustain him in the proof that the paper was actually altered on its face.

3rd. The defendant's first prayer should have been granted. Good sued for reimbursement for a sum he had paid on a note signed by himself first and then by Martin, and drawn in the handwriting of Good. The abstract proposition of this prayer cannot be disputed. If the note was given for the individual debt of Good he was not entitled to reimbursement. The refusal of this prayer was tantamount to an instruction that the jury were bound to believe it was a partnership note, and that Martin had assumed to pay it. Did the facts warrant it? That it was signed by both was no evidence of partnership. 11 *Johns.*, 161, *Hopkins vs. Smith.* The note does not pur-

port to be a partnership note. It is in the handwriting of Good. According to the testimony of Lantz, it was not drawn as Good & Martin drew their firm paper. The jury might infer that there was some reason for this, and would not overlook the fact, that in ordinary transactions the principal party signs first. If Lantz's testimony was competent, it goes no further than to show the partnership was indebted to a widow Martin, but what widow Martin, or for what amount, his testimony does not show. We hold that it was not proper for the court to take from the jury the question as to whether this note was given for the individual debt of Good.

4th. The third and fourth prayers should also have been granted. It is certain, if there was a contract, that the claims which the parties were to take respectively were as much a part of it as any thing else. Without showing what they were, the rights of the parties were wholly indefinite. The receipt of the claims due the firm, which Martin was to take, constituted the consideration for his assumption to pay the widow Martin's claim against the firm, if there was such an assumption. Again, upon the proofs in the case, how could it be said that Martin had a right to any one claim, or if he should recover it he might not be called upon by Good to account for it to him? The consideration of every simple contract must be set forth and proved.

5th. The fifth prayer ought to have been granted. There was evidence that the paper had been altered in the handwriting of Good.

*1. Nevitt Steele* for the appellee:

1st. It is difficult to determine from the manner of taking the first exception, to what it was intended to apply, whether to the testimony preceding or that following the objection; and as it cannot apply to both, the exception is futile because the same evidence as that objected to was permitted to go to the jury without objection, and hence the appellant has received no injury from this ruling. But the ruling was correct, supposing the exception was properly taken. The witness, Lantz, was present at, participated in, and had full knowledge

of the agreement between the plaintiff and the defendant in the settlement of their partnership affairs, and prepared the written statement of the terms of that settlement at or about the time it was made. He swore at the trial that he was *sure* he would not have put anything in the statement which was not true, and that he *had no doubt* that the particulars of the settlement contained in that statement were each and all of them the terms of the agreement made between the parties. Under these circumstances, it was competent for the witness to testify to the truth of the facts stated in the paper produced at the trial, from the paper itself, although he had no recollection of the facts independently of the paper, and the rule of evidence which permits a witness so to testify, is peculiarly applicable to a case like this, where the parol agreement to which the proof refers, was entered into ten years before the trial of the cause, and where the witness recollects and proves the general terms and character of the agreement, and only relies on the paper for certain amounts and names of persons. It must be borne in mind that the paper was never *offered in evidence*, the witness merely having given *parol proof* of the contract *from the paper*, after having looked at and identified it as in his handwriting, and this distinction will explain the conflict in some of the American cases on this point. The rule of evidence is correctly laid down in 1 *Greenlf. on Ev.*, sec. 437, and the contrary doctrine in 1 *Phillips*, 209, is not sustained by the authorities cited. In 2 *Nott & McCord*, 334, *State vs. Rawls*, it is clearly shown that Mr. Phillips has mistaken the case of *Doe vs. Perkins*, 3 *Term. Rep.*, 753, relied on by him for the position that a witness cannot testify, after reading the paper, unless he can speak of the facts independently of the paper. See, also, on this point, 2 *Camp.*, 112, *Burrough vs. Martin;* 1 *Carr. & Kir.*, *N. P.*, 320, *Topham vs. McGregor;* 2 *Mann. & Ryl.*, 5, *Maugham vs. Hubbard;* 3 *Rhode Island Rep.*, 132, *State vs. Colwell;* 33 *New Hamp.*, 167, *Bartlett vs. Hoyt;* 16 *Wend.*, 595, *Merrill vs. Ithica Rail Road Co.;* 4 *Sandf.*, 129, *Huff vs. Bennett;* 15 *New York Rep.*, 485, *Halsey vs. Sinsebaugh;* 3 *Md. Rep.*, 286, *Lewis vs. Kramer, et al.;* 4 *Phillips ( Cowen & Hill's notes) note,* 377.

2nd. The evidence offered by the defendant in the second exception, as to the general reputation of Good, the plaintiff, was properly ruled out. It was not competent for the defendant to prove a *forgery*, if that was his object, in this way, and so far as the alteration of the note was concerned, it was immaterial who made it, or whether it was made at all, for the insertion of the word *"and"* in no manner altered the character of the paper, and had no effect whatever.

3rd. The prayers that were rejected, were properly refused. The *first*, because there was no evidence in the cause that the single bill was given for the individual debt of Good. The *third*, because it called upon the court to say that proof of the contract in the very terms and language in which it was made by the parties to it, was insufficient to prove the contract. The *fourth*, because upon the true construction of the contract offered in evidence, the payment by Good of the debts which he had agreed to pay, was not a condition precedent upon which depended the obligation of Martin to pay the note to Mrs. Martin. 5 *G. & J.*, 255, *Watchman vs. Crook*. 3 *Bing.*, *N. C.*, 355, *Stavers vs. Curling*. The *fifth*, because the only evidence as to any alteration of the note, was the testimony offered to show that the word *"and"* had been placed opposite the signature, and such an alteration would neither have "changed the character of the note," nor "made it a note to bind the partnership," as the prayer called upon the court to say.

Tuck, J., delivered the opinion of this court.

The objection to evidence made by the appellant is to be found in the middle of the statement of facts, it not appearing whether the point was raised on what precedes or on that which follows the objection. Although this was remarked upon at the trial, we think it can make no difference, because as the objection cannot be considered as applying to both portions of the statement, and, as the evidence, before and after the objection is substantially the same, one or the other must be considered as having gone to the jury without objection. But, as the question is an important one, and was fully ar-

gued, we shall not regard the manner of making the objection, but decide the point intended to be raised for review, and that is, whether the evidence of the witness as to the terms of the agreement between the parties was properly admitted, after he had said that he had no recollection of the paper, and that his memory was not so refreshed by reading it as to enable him to recollect the amount of accounts taken, or the particular debts assumed by each partner?

Whatever rules may have existed, as shown by the early cases, requiring that the witness should be able to say, after reading a memorandum, that his memory was so far refreshed as to enable him to testify to the facts therein stated, independently of the memorandum, it is very certain that they are not now enforced with the same strictness as formerly. In this country and in England, the doctrine has been extended and applied to cases where justice would, otherwise, have failed, and, as we think, on grounds quite compatible with fundamental principles. For example, where it became necessary to prove the receipt of money, and the witness said that from seeing the entry in his own book, made by himself, he had no doubt he had received the money, his testimony was allowed. *Maugham vs. Hubbard*, 15 *Eng. C. L. Rep.*, 147. 8 *Barn. & Cress.*, 14. The same principle applies where persons are called to prove the execution of deeds, and other writings to which their names appear as witnesses, or to speak of dates, amounts and other details which a man cannot carry in his mind, but of which they have made memoranda. They may have no recollection of the facts, and yet, with the utmost safety, be willing to swear that they have no doubt of their occurrence, merely because their handwriting would not have appeared in connection with them if they had not taken place as therein stated. We might refer to many authorities in support of this view, but content ourselves with naming 1 *Smith's Leading Cases*, 139, *Price vs. Earl of Torrington; 4 Ph. Ev. (Cowen & Hill*, 726, *note* 377,) 1 *Greenl. Ev.*, sec. 437; 16 *Wend.*, 586, where the cases may be found. In *The State vs. Rawls*, 2 *Nott & McCord*, 331, it is shown that the doctrine in 1 *Phillips' Ev.*, 209, that a witness can-

52      v. 14.

Martin *vs.* Good.

not testify, after reading the memorandum, unless he can speak of the facts independently of the memorandum, is not sustained by the cases referred to by him; and several judges, whose attention appears to have been particularly called to the subject by the remarks of Mr. Justice Nott, have expressd their concurrence with him, and, indeed, the annotators upon that valuable treatise have signalized his opinion as a "bold and successful vindication of the English cases from the narrow construction of Phillips." *Cowen & Hill's Phillips,* *Vol.* 4, *page* 731, *note* 377. See *Topham vs. M'Gregor,* 1 *Carr & Kir.,* 320, in 47 *Eng. C. L. Rep.* 2 *Adol. & Ellis,* 210. 15 *Wend.,* 193, *Clark vs. Vorce.* 16 *Wend.,* 586, *Merrill vs. Ithaca & Owego R. R. Co. Halsey vs. Sinsebaugh,* 15 *N. Y.,* (1 *Smith,*) 485. *Haven vs. Wendell,* 11 *N. Hamp.,* 112. *Watson vs. Walker,* 3 *Foster,* 471. *State vs. Colwell,* 3 *R. Island,* 132. *Bartlett vs. Hoyt,* 33 *N. Hamp.,* 151.

From an examination of the adjudged cases, we are of opinion that the law applicable to the point under review is correctly stated in 1 *Greenlf. Ev.,* sec. 437, as follows: "Where the writing neither is recognized by the witness as one which he remembers to have seen before, nor awakens his memory to the recollection of any thing contained in it, but nevertheless, knowing the writing to be genuine, his mind is so convinced that he is, on that ground, enabled to swear positively to the fact," the testimony will be received. The examples put show the reasonableness of the doctrine, and that the ends of justice require it to be so. A more recent author, whose conclusions, we think, are generally sustained by the authorities, states the English doctrine substantially in the same way. *Powel on Evidence,* 308, in 96 *Law. Lib.,* 119. Here the witness stated, that from the paper being in his own handwriting, he had no doubt it did contain the true terms of the agreement made in his presence, and upon cross-examination he gave, in effect, the same testimony. If more were required in such cases, memoranda to refresh the memory would be of little use, because few men could undertake to relate the particulars of such transactions, independently of the paper, and the pur-

poses of judicial tribunals, in promoting the ends of justice, would be defeated.

We are not aware of any rule of evidence that sanctions the appellant's attempt to get in the testimony proposed in the second exception, and excluded by the court. It was insufficient to prove that the witness had been imposed on by Good in preparing the agreement; in other words, that he had perpetrated a fraud on Martin, which was one object alleged in the offer, and the same may be said of the purpose to follow it by evidence that the note had been altered. Forgery or alteration of paper cannot be proved in that loose and uncertain way. Besides, the inquiry was not within the issue. A man's character might be ruined by these means, without any power, on his part, to rebut the charge, for when a party is required to prove his case, in an action of this kind, it is not understood that he must be prepared to defend his reputation for honesty when assailed by the other side. The exceptions as to the admissibility of evidence being disposed of, we proceed to the prayers.

The first was properly refused, because there was no evidence that the note in question was given for the individual debt of Good, but there was proof tending to show that it was a partnership transaction, and of that view of the case the defendant had the benefit by the allowance of his second prayer.

The third and fourth were also properly refused. The case did not require proof of payment of all the debts which Good had agreed to pay as a condition precedent, before he could recover for this one which he had paid for Martin. If Good had not performed his contract, and Martin had been made to pay debts assumed by him, it might have been shown, but the plaintiff was not required by the law to open that inquiry. The partnership had been settled on the terms proved, and each became liable for whatever either might have to pay on the other's account, and all that either claimant could be required to show, in an action for money so paid, was the agreement and payment of the sum demanded. Of course matter of defence would have to be met as in other cases.

There was no evidence from which the jury could have

found that Good had changed the character of the note, so as to bind the partnership; on the contrary, the proof was that it was originally a debt of the firm, and that Martin had agreed to pay it. Adding the word "and" did not change the liability of the parties, there was, therefore, no warrant for the fifth prayer.

*Judgment affirmed.*

(Decided July 29th, 1859.)