THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLIFTON BOWMAN, Defendant-Appellant.

Fifth District    No. 80-2

Opinion filed April 29, 1981.

John H. Reid and Richard J. Bennett, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Martin N. Ashley and Christopher S. Carroll, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

The defendant, Clifton Bowman, was charged by indictment with the offense of burglary. Following a bench trial he was found guilty and was sentenced to imprisonment for a term of three years. On appeal, defendant asserts that the "best evidence" rule requires that he receive a new trial on the grounds that the State did not lay a sufficient foundation for admission of a photocopy of defendant's written confession. Defendant previously had moved to suppress the confession prior to trial, asserting that it was made as the result of police coercion.

The residence of Diane Washington was burglarized on September 1, 1979. At trial, Freddie McCoy, whose apartment was next door to that of Ms. Washington, testified that at approximately 3 a.m. on that date she was awakened by "someone hollering, get away from that so-and-so's window." Ms. McCoy ran downstairs, where she saw the defendant, whom she knew, fleeing from her apartment window. She observed him running with two other boys who were carrying a television set. While defendant was 40 or 50 feet away when Ms. McCoy recognized him, she

asserted that because of a street light she had no trouble seeing him. The witness then noticed that her window screen was torn and the window slightly raised. She also saw that the door to Diane Washington's apartment was "cracked open" and the curtains were "flying out the window."

Diane Washington testified that when she returned home that morning, Freddie McCoy told her what she had seen earlier. Ms. Washington entered her apartment and found that her television and two stereo speakers were missing. She testified that the window had been closed when she left the evening before.

Detective John Thurman of the East St. Louis Police Department testified that defendant was arrested on September 1, 1979, and orally advised of his Miranda rights. Defendant then took the officer to several places where he said the various items taken from Diane Washington's apartment had been left; however, none were recovered. Defendant told the officer the nicknames of the two individuals who had been with him when the apartment was entered. The officer then took defendant to the police station. On the following day, defendant was interrogated.

At trial, Detective Thurman identified a copy of the waiver of Miranda rights which had been signed by defendant and explained that the original had been in the police file initially but that it was missing when he came to court that day. Thurman asserted that the copy was a fair and accurate representation of the original of the waiver of the Miranda rights.

Detective Thurman then identified a copy of the statement allegedly given by the defendant. He said he did not know where the original was but that the photocopy was an accurate representation thereof. Defendant then objected to the officer's testimony regarding the documents on the basis that neither original had been produced.

Detective Thurman told the court that no search for the originals had been conducted because their absence from the file was not discovered until after he arrived at court for trial. The trial court then ruled that the originals were the best evidence and that the State would have to demonstrate that they were unavailable. A recess was then taken so the State could search for them.

After the recess, Robert White, an investigator for the St. Clair County state's attorney's office, testified that he had been requested by the prosecutor to attempt to locate the original Miranda warning paper. He stated that he had telephoned the woman in charge of the police records room, who looked in the file but could not find the original.

Officer White then testified that he had worked for the East St. Louis Police Department and was familiar with its record-keeping procedures. The witness testified that when a case is referred to the Detective Division, that unit receives two copies of the original items contained in

the file. When a copy is made of an original item, a form is filled out and placed in the file. The instant file contained a form reflecting that the file had been checked out for the previous preliminary hearing; however, the file contained no form indicating when and by whom it was taken for purposes of making copies of original items it contained. After arguments of counsel, the trial court denied defendant's motion to suppress and admitted the photocopies into evidence.

Detective Thurman then testified that after defendant waived his rights, Thurman typed his statement verbatim regarding the circumstances of the offense. The officer then gave defendant an opportunity to read the statement and instructed him to sign it if it was correct. Defendant then signed the statement.

The copy of the statement indicated defendant's version of the events as follows. At approximately 2 a.m. on September 1, 1979, defendant and two others walked up to the complainant's apartment door and knocked, but no one answered. Although the front window was raised slightly, defendant opened it more, and then one of his accomplices crawled through the window and opened the door. The other accomplice entered the apartment, and defendant walked down to the corner. When he saw the two leave the apartment, he returned to it but then heard someone saying that he was trying to break into an apartment. He picked up the stereo speakers the other two had deposited in the front yard and took them to the side of the building. He then returned to the front of the apartment and, with the two others, picked up the television set and placed it in the weeds close to a nearby apartment building. Defendant then went home.

At trial, defendant asserted his innocence and denied both taking the arresting officer to look for the speakers and discussing such speakers with the officer. He testified that after waking at 1 a.m., he left his apartment to walk over to his sister's apartment which is in a nearby building. While he would have passed the complainant's apartment on his way there, he never got that far. He stated that he heard a woman yell that he was trying to break into someone's apartment, so he went home, arriving soon after 1:30 a.m. Before going back to sleep, he called the police department and asked if they had an arrest warrant outstanding on him. They told him they did not.

Defendant's sister testified that at about 1:45 a.m., she looked out her window and saw defendant walking toward her apartment. She soon left the window and did not see him reverse direction to return to his apartment.

The defendant testified that on the day of his arrest he was questioned by Officer Thurman but that he refused to make a statement. He admitted that he signed the written statement the following day and identified his signature on the copy but asserted that he did not sign it

voluntarily. He said he signed it because he was "nervous and upset" because "from the way [Thurman] was looking, I did not know what he was going to do to me, you know."

Following closing arguments, the trial court found defendant guilty of burglary. Subsequently, defendant's motion for a new trial was denied, and he was sentenced to imprisonment for a term of three years.

On appeal, defendant argues that the trial court erred in permitting the prosecution to introduce a photocopy of defendant's statement without establishing a proper foundation with respect to the whereabouts of the original. Defendant relies on *People v. Wells* (1942), 380 Ill. 347, 44 N.E.2d 32, which set forth the following foundation requirements for admission of secondary evidence under the "best evidence" rule:

> "In order to let in secondary evidence of contents of a written instrument, the person to whose possession it was last traced must be produced unless this is shown to be impossible, in which case search among his papers must be proven if that can be done. In all events search must be made for the paper with the utmost good faith and the search must be as thorough and diligent as if the rule were that all benefit of the paper would be lost unless it be found." (380 Ill. 347, 355-56, 44 N.E.2d 32, 36.)

Defendant contends that the State failed to make the showing which *People v. Wells* requires.

■■ Later authorities indicate that the foundation described in *Wells* has not consistently been applied. It is now accepted that the sufficiency of a foundation for admission of secondary evidence of the contents of a writing "depends upon the circumstances of each case and is, to some degree, within the discretion of the trial court." (*People v. Baptist* (1979), 76 Ill. 2d 19, 27, 389 N.E.2d 1200, 1204.) Where a duplicate of a confession is involved, such as that in the instant case, the foundation described in *Wells* has not been required. In discussing a similar controversy, the court in *People v. Carter* (1968), 39 Ill. 2d 31, 36-37, 233 N.E.2d 393, 396-97, stated:

> "The defendant next charges that the State violated the best-evidence rule when it intoduced into evidence, over objection, a multilith copy of his confession. It appears from the record that the confession was typed by a stenographer and was signed by the defendant. Copies of the confession were then made from the original by an offset duplicating process, and it was one of these copies which was introduced into evidence by the State. Upon demand by defense counsel that the original be produced, the State's Attorney explained to the court that the original was destroyed after the copies from it had been made. The original, according to the State, does 'not hold up very long, it is not kept.'

'Where the destruction or loss of an original document is claimed, the circumstances should be shown, so as to rebut any inference of fraudulent design by the party seeking to introduce a copy or parol evidence or, to show that the original was not initially concealed, destroyed or disposed of for the purpose of introducing a copy.' (4 Callaghan's Evidence 186, sec. 6.19.) In view of the circumstances and the explanation offered by the State, we are of the opinion that the absence of the original confession was adequately explained and that sufficient foundation was laid for the introduction of the multilith copy."

A similar conclusion was reached in *People v. Taylor* (1968), 40 Ill. 2d 569, 241 N.E.2d 409.

■■ ■ Left unspoken in *Carter* and *Taylor* is the foundation rule which replaced the rationale of *Wells*. This standard requires that a party prove the following: (1) the prior existence of the original; (2) its loss, destruction, or unavailability; (3) the authenticity of the substitute; and (4) the party's own diligence in attempting to procure the original. (*Gillson v. Gulf Mobile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193, 246 N.E.2d 269; *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.) The foundation required by these cases was established in the instant case. Detective Thurman testified as to the existence of the original confession, which he typed from the defendant's narrative. He also testified as to its unavailability, noting that he did not know the location of the original and was surprised at its absence from the file. The authenticity of the copy was established by Thurman's testimony that it fairly and accurately reflected the original. Furthermore, the officer's expressed surprise at the absence of the original served to rebut any inference of fraudulent design on behalf of the prosecution. In view of the circumstances, sufficient foundation was laid for the introduction of the photocopy.

We also note the current trend of the law of evidence away from strict adherence to "best evidence" foundation requirements where photocopies and other duplicates of original written instruments are involved. Such "lengthy and laborious" foundation requirements as that established in *People v. Wells* have been criticized as "ill-judged expenditures of effort" in light of the accuracy and reliability of modern methods of information storage and retrieval. (See 4 Wigmore, Evidence §1195 (1972).) In recognition of these technological changes, the Federal Rules of Evidence provide:

"A 'duplicate' is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other

equivalent techniques which accurately reproduces the original." Fed. R. Evid. Rule 1001(4).

"A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R. Evid. Rule 1003.

The substance of the Federal Rules of Evidence has been adopted by a number of States. For example, Indiana has concluded that a duplicate of a document is admissible " 'to the same extent as an original unless a genuine issue is raised as to the authenticity of the original, or under the circumstances existing it would be unfair to admit the duplicate as an original.' " (*Brandon v. State* (Ind. 1979), 396 N.E.2d 365, 370; see also *Cooper v. State* (1979), 41 Md. App. 392, 397 A.2d 245; *State v. Demouchet* (La. 1977), 353 So. 2d 1025; *State v. White* (1970), 4 Or. App. 151, 477 P.2d 917.) These cases express what implicitly has been recognized in Illinois in *People v. Carter* and *People v. Taylor*—that the accuracy of a duplicate resulting from the reproduction of the contents of an original is in most cases no longer a significant issue. The inquiry instead is directed to the authenticity of the original, unless circumstances suggest that further inquiry is required. In the instant case, defendant does not question the authenticity of the wording of the original of his purported confession. In fact, he identified the copy of the signature on the document as being his signature. His only objection was that the contents thereof were obtained by coercion.

██ Significantly, the rationale of these cases in no way reduces the reliability of the exhibit presented at trial, which is the fundamental purpose underlying the application of the best evidence rule. The rule applies only to duplicates. Other secondary evidence requires proof of the prior existence of the original, its loss, the authenticity of the substitute, and reasonable diligence in trying to procure the original. (*Gillson v. Gulf Mobile & Ohio R.R. Co.*) Moreover, the rule provides for any contingency suggested by the circumstances surrounding the admission of duplicates as well. The rule merely eliminates "lengthy and laborious" foundation requirements when they are not justified and adjusts the inquiry to the circumstances of each case in accordance with Illinois law. (*People v. Baptist.*) We therefore believe that a duplicate of a document should be admissible in Illinois to the same extent as an original unless a genuine issue is raised as to the authenticity of the original or unless it would be unfair to admit the duplicate as an original under the circumstances present in the case where the document was offered into evidence.

In the instant case, the admission of the photocopy of the confession was not error. There was no showing of fraudulent design in the disappearance of the original, and the prosecution established a foundation for admission of the duplicate which comports with the standard established in *People v. Carter*. Accordingly, defendant's conviction is hereby affirmed.

Affirmed.

KARNS and HARRISON, JJ., concur.