KWAI PAUL LAM, Plaintiff-Appellee, *v.* NORTHERN ILLINOIS GAS COMPANY, Defendant-Appellant.

First District (2nd Division)   No. 82—725

Opinion filed May 24, 1983.

Mayer, Brown & Platt and Jares, Komosa, Burke & Shanahan, both of Chicago (Michael R. Feagley and Michele Odorizzi, of counsel), for appellant.

Walsh & Fielding, of Chicago (John R. Fielding, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Plaintiff, Kwai Paul Lam, brought a negligence action against defendant, Northern Illinois Gas Company (NI-Gas), to recover damages for personal injuries he suffered in a gas explosion. In a jury trial, a verdict was returned in favor of defendant. Plaintiff moved for judgment notwithstanding the verdict or, in the alternative, for a new trial on the grounds that certain evidence improperly had been admitted because it was hearsay and violated the best evidence rule. The trial court denied the motion for judgment *n.o.v.* but granted plaintiff's motion for a new trial. We allowed defendant's petition for leave to appeal pursuant to Supreme Court Rule 306 (87 Ill. 2d R. 306).

On July 7, 1974, plaintiff was severely burned in a gas explosion at his mother's apartment in Skokie, Illinois. In 1974, he filed the instant action against the owner of the building, alleging that its negli-

gence in maintaining certain appliances had caused the explosion. In July of 1976, plaintiff amended his complaint to add NI-Gas as a defendant. Plaintiff thereafter again amended his complaint to include an allegation that NI-Gas had been negligent in failing to investigate several telephone calls it purportedly had received prior to the explosion reporting possible gas leaks at the apartment complex.

The first jury trial ended in a mistrial. At the second jury trial plaintiff presented the testimony of four former residents of the apartment complex who stated that at various times before the explosion occurred they telephoned the custodian of the complex or NI-Gas or both to complain of possible gas leaks.

In defense the custodian testified that in the week prior to the accident he did not receive any gas leak complaints from these four witnesses. A fifth former resident stated that less than one-half hour before the explosion he notified the custodian of a gas leak. NI-Gas also attempted to introduce into evidence photostatic copies of its customer service cards to prove that prior to the date of the accident NI-Gas had not received any telephone calls concerning gas leaks at the building where the explosion occurred or at an adjacent building.

At the time of the accident, NI-Gas had a standard procedure for responding to telephone calls reporting possible gas leaks. If this procedure had been followed, a three-digit code number ending in "9" (indicating a gas leak complaint) would have been entered into the service card for the customer reporting the leak and a serviceman would have been dispatched immediately to investigate the complaint. When NI-Gas tried to introduce copies of these cards, plaintiff objected, arguing that the best evidence rule required NI-Gas to offer the original cards or to account satisfactorily for their unavailability. The trial court agreed and ruled that if the original customer service cards were no longer available, NI-Gas had the burden of establishing that the copies were exact duplicates of the originals and that the originals had not been destroyed in bad faith.

NI-Gas represented to the court that the original cards had been destroyed, either as part of NI-Gas' normal records retention program or when the customer service system was computerized. The court, however, indicated that these explanations might well be insufficient to meet NI-Gas' burden in light of the fact that the original cards apparently had been destroyed after NI-Gas had been named as a defendant in plaintiff's lawsuit.

NI-Gas subsequently abandoned its attempts to put the copies of its customer service records before the jury. Instead, NI-Gas presented the testimony of Leonard Starasinic, NI-Gas' local customer

service manager. Starasinic stated that the morning after the explosion he personally examined all of the customer service cards for the building where the accident occurred and the adjacent building. He observed that the cards contained no notations that any telephone calls had been received reporting gas leaks from tenants in either building for a period of at least six months to one year prior to the explosion. Starasinic testified that if standard procedures had been followed, such calls, if received, would have been noted on those cards. After Starasinic examined the cards, they were photocopied and the copies were sent to NI-Gas' director of claims and insurance. The original cards were returned to service and subsequently destroyed. The copies were not made in the ordinary course of business. The trial court admitted this testimony over plaintiff's hearsay and best evidence objections.

Later in the trial the court informed the parties out of the presence of the jury that Starasinic's testimony had been admitted only for the purpose of impeaching plaintiff's witnesses and not as substantive evidence that NI-Gas in fact had not been notified. The court instructed NI-Gas' attorneys that in their closing arguments they could refer to Starasinic's testimony in commenting on the credibility of the witnesses who allegedly had called NI-Gas, but that they could not refer to it as "substantive evidence of the reasonableness of the gas company's conduct or reasons for the gas company doing something or not doing something."

In closing argument, defense counsel repeatedly referred to Starasinic's testimony to challenge the credibility of those witnesses who testified that they had reported possible gas leaks to NI-Gas. Plaintiff's counsel did not object to the first three such references. After reviewing the testimony concerning the company's standard operating procedures, counsel for NI-Gas raised the point for a fourth time:

"Some of you ladies and gentlemen have called other gas companies possibly with, with a request for assistance where a pilot light possibly was out and he smelled gas and you know what happened, a serviceman came out. I say that if it is difficult to believe, stretches your imagination that this company would miss one call, what about two?

Isn't it getting a little bit more unbelievable, what are the probabilities? Probability grow[s] astronomically if you might say that they ignore three calls so I say to you, ladies and gentlemen, *the records of the company which were testified to and which did not reflect any such telephone calls would establish no calls were made, that is certainly not the—*

MR. FIELDING: Objection.

THE COURT: Objection sustained, counsel's argument stricken from the record, jury will disregard it.

MR. HIGGINS [counsel for NI-Gas]: Apologies." (Emphasis added.)

Counsel for NI-Gas then commented on Starasinic's testimony for a fifth time: "*** [H]e told you he checked every card from those two buildings searching for any kind of complaint of gas leaking for six months prior." No objection was made to this comment.

In rebuttal, plaintiff's counsel attempted to discredit Starasinic's testimony by pointing out that NI-Gas had failed to introduce into evidence the customer service cards which Starasinic had examined.

The jury returned a general verdict in favor of NI-Gas. On October 16, 1980, plaintiff moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. In the motion plaintiff argued that Starasinic's testimony should not have been admitted because it was hearsay and because, in the absence of the original customer service cards, it violated the best evidence rule. Subsequently, on March 4, 1982, the trial court entered an order denying the motion for judgment *n.o.v.* but granting the motion for a new trial on the ground that the admission of the testimony had violated the best evidence rule. The court found:

"1. That the trial court's determination to allow witness, Leonard Starasinic's testimony as impeachment of the plaintiff's witnesses, absent defendant, NORTHERN ILLINOIS GAS COMPANY's original records, so that Mr. Starasinic's impeachment testimony before the jury was based solely upon his recollections of the content of the NORTHERN ILLINOIS GAS COMPANY's records, was error.

2. That said error, when coupled with the reference to said impeachment witness's testimony during closing argument, and I quote, '*** the records of the company, which were testified to and which did not reflect any such telephone calls, established no calls were made, that is certainly not the —,' and even though said reference was objected to, at that point, and the jury was instructed to disregard same, was prejudicial to plaintiff, and based upon the interaction of these two circumstances, with each other, was sufficient to taint the verdict of the jury so substantially as to require a new trial upon the merits of the cause."

We allowed defendant's petition for leave to appeal pursuant to Supreme Court Rule 306 (87 Ill. 2d R. 306).

■ The original writing rule, which is often but inaccurately referred to as the best evidence rule, provides that in establishing the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent. (McCormick, Evidence sec. 230, at 560 (2d ed. 1972).) The parties agree that the contents of the original customer service cards, insofar as they might indicate whether complaints of possible gas leaks had been reported to NI-Gas, were material. NI-Gas, however, argues that the original writing rule does not apply where the secondary evidence is offered to prove a negative fact. In support of this argument, NI-Gas relies on E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 1002.1 (3d ed. 1979), which in turn cites the Federal Advisory Committee's Note to Rule 1002 of the Federal Rules of Evidence.

■ Rule 1002 provides in part that "[t]o prove the content of a writing *** the original writing *** is required ***." (Fed. R. Evid. 1002.) The Advisory Committee's Note states that the original writing rule does not apply "to testimony that books or records have been examined and found not to contain any reference to a designated matter." Fed. R. Evid. 1002 (1973), 56 F.R.D. 183, 342 (Advisory Committee's Note (1973)); see 4 Wigmore, Evidence sec. 1244 (Chadbourn rev. ed. 1972).

Initially, we observe that Rule 1002 has not been adopted in Illinois. More significantly, we believe that the Advisory Committee's Note is inapplicable to the facts before us. In our judgment, a distinction must be made between "testimony that *** records have been examined and found not to contain any reference to a designated matter," and testimony that there is no reference to a specific matter in a particular original record which record is known to have existed. In the instant case, NI-Gas kept business records (*i.e.*, the customer service cards) which, in the normal course of its operations, would have reflected whether NI-Gas had received any complaints of possible gas leaks. It is the contents of those records and not their existence which is in dispute, and this serves to distinguish the authorities on which NI-Gas relies.

The only Illinois case our research has discovered on this precise question indicates that the original writing rule does apply to proof of negative facts. In *City of Chicago v. McGraw* (1874), 75 Ill. 566, our supreme court held that parol evidence that no sales of United States land in a certain district were made was properly excluded because "[t]he government records furnish the proper evidence of what lands were sold." (75 Ill. 566, 571. But see *People ex rel. Illinois State Den-*

*tal Society v. Vinci* (1976), 35 Ill. App. 3d 474, 478, 342 N.E.2d 206, where, in *dicta*, the appellate court suggested that the original writing rule does not apply to proof of negative facts.) *Lawrence v. Stiles* (1885), 16 Ill. App. 489, cited by NI-Gas, does not set forth a contrary rule. In *Lawrence*, the appellate court held that where bank records had been admitted as business records, the absence of an entry in those records could be noted since there was evidence that an entry normally would have been made. (16 Ill. App. 489, 498-500.) At issue in *Lawrence* was the hearsay rule, not the original writing rule. See *Easley v. Apollo Detective Agency, Inc.* (1979), 69 Ill. App. 3d 920, 936-37, 387 N.E.2d 1241.

Examination of McCormick's evidence text sheds additional light on this question:

> "Distinguishable from the situation in which the witness undertakes to state the fact based upon what he has seen in a writing, is the situation in which the witness testifies that the fact did not occur because relevant records contain no mention of it. This negative type of testimony is usually held not to constitute proof of contents and thus not to require production of records. But it will be seen that care in the application of this exception is required, since testimony as to what does not appear may easily involve a questionable description by the witness of the details which do appear. Perhaps a better approach would be to treat such 'non-entry' testimony as a form of summary, which in fact it is, and to subject it to the safeguards employed in that context." McCormick, Evidence sec. 233 (Supp. 1978).

The safeguards to which McCormick refers are that the records must be produced or made available to the opposing party for inspection. (McCormick, Evidence sec. 233, at 564 (2d ed. 1972).) Here, the original records were not produced at trial nor were they made available for plaintiff's inspection. The Illinois decisions have held that the adverse party must be given an opportunity to examine the original records and that the original records from which the summary was made be admissible in evidence. (*LeRoy State Bank v. J. Keenan's Bank* (1929), 337 Ill. 173, 191-93, 169 N.E. 1; *People v. Sawhill* (1921), 299 Ill. 393, 403-04, 132 N.E. 477; *612 North Michigan Avenue Building Corp. v. Factsystem* (1977), 54 Ill. App. 3d 749, 752, 370 N.E.2d 236; *Murray v. Kleen Leen, Inc.* (1976), 41 Ill. App. 3d 436, 443, 354 N.E.2d 415.) The originals need not be introduced into evidence although the court may require that they be produced for in-court examination. (*Sheldon Livestock Co. v. Western Engine Co.*

(1973), 13 Ill. App. 3d 993, 999, 301 N.E.2d 485.) The Federal opinions construing Rule 1006 of the Federal Rules of Evidence (Fed. R. Evid. 1006) are in accord with these decisions. (See the cases collected in Annot., 50 A.L.R. Fed. 319 (1980), and in 5 Weinstein's Evidence pars. 1006 [01] through [05] (1982).) If summary testimony is offered in place of the matters that are summarized, an exception to the original writing rule is required. McCormick, Evidence sec. 233 n. 40 (Supp. 1978); 4 Wigmore, Evidence sec. 1230 (Chadbourne rev. ed. 1972).) Wigmore's view was codified by Rule 1006 of the Federal Rules of Evidence (1973), 56 F.R.D. 183, 345-46, Advisory Committee's Note (1973). See also *United States v. Scales* (6th Cir. 1979), 594 F.2d 558, 562, where the court held that Rule 1006 applied to a summary of what the contents of the underlying records did *not* include.

Based on the foregoing, we agree with the trial court that the original writing rule was applicable in this case.[1] We must next determine whether NI-Gas was entitled to introduce secondary evidence of the contents of the customer service cards.

■ To introduce secondary evidence of a writing, a party must first prove prior existence of the original, its loss, destruction or unavailability; authenticity of the substitute and his own diligence in attempting to procure the original. (*Gillson v. Gulf, Mobile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193, 199, 246 N.E.2d 269.) Here, NI-Gas established that the original customer service cards did exist. NI-Gas, however, destroyed the cards. If the original document has been destroyed by the party who offers secondary evidence of its contents, the evidence is not admissible unless, by showing that the destruction

---

[1]Under Rule 1001(4) of the Federal Rules of Evidence, "[a] 'duplicate' is a counterpart produced *** by means of photography *** which accurately reproduces the original." (Fed. R. Evid. 1001(4).) Under Rule 1003, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." (Fed. R. Evid. 1003.) The substance of these rules was adopted in *People v. Bowman* (1981), 95 Ill. App. 3d 1137, 1143, 420 N.E.2d 1085. The court noted that "the rule provides for any contingency suggested by the circumstances surrounding the admission of duplicates." (95 Ill. App. 3d 1137, 1143.) While there is some question whether the definition of duplicates in Rule 1001(4) is broad enough to cover photographic copies of original writings not intended by the person making them to be treated as originals (see 1 Gard, Illinois Evidence Manual R. 6:19 (2d ed. 1979)), we find it unnecessary to reach this question given the unusual circumstances of this case. In our judgment, it would be unfair to plaintiff to consider the photostatic copies of the customer service cards as "duplicates" where the record suggests that NI-Gas destroyed the originals *after* it was joined as a defendant in plaintiff's suit. See E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 1003.1 (3d ed. 1979).

was accidental or was done in good faith, without intention to prevent its use as evidence, he rebuts to the satisfaction of the trial judge, any inference of fraud. (McCormick, Evidence sec. 237, at 571 (2d ed. 1972); 29 Am. Jur. 2d *Evidence* secs. 454, 463 (1967); 32A C.J.S. *Evidence* sec. 824 (1964).) In Illinois, "if a party has voluntarily destroyed a written instrument, he cannot prove its contents by secondary evidence unless he repels every inference of a fraudulent design in its destruction." (*Blake v. Fash* (1867), 44 Ill. 302, 304; accord, *Palmer v. Goldsmith* (1884), 15 Ill. App. 544, 546.) We note further that the "resolution of loss or destruction issues is a matter necessarily consigned to the sound discretion of the trial judge." *Wright v. Farmers Co-Op* (8th Cir. 1982), 681 F.2d 549, 553; accord, *People · v. Baptist* (1979), 76 Ill. 2d 19, 27, 389 N.E.2d 1200.

■ In the instant case, the trial court did not make an explicit finding that NI-Gas had failed to "repel every inference of fraudulent design in [the] destruction" of the original customer service cards, although such a finding may be implied in the court's order granting plaintiff a new trial. If we were to decide this issue on the basis of the present record which, as NI-Gas concedes, leaves "many unanswered questions about the destruction of the cards," we would be inclined to affirm that order.[2] In our judgment, NI-Gas did not carry its burden of demonstrating that it destroyed the original cards in good faith. But since we conclude that the absence of a complete record explaining the destruction of the cards cannot be attributed solely to NI-Gas, we believe that this cause must be remanded for further proceedings.

After NI-Gas abandoned its attempts to place the photostatic copies of its customer service cards before the jury, the court allowed Leonard Starasinic to testify regarding his examination of the original cards without requiring NI-Gas to present any further evidence of the circumstances surrounding the destruction of the originals. In our opinion, it would be unfair to NI-Gas to affirm the trial court's order granting plaintiff a new trial where, by virtue of the court's action in admitting Starasinic's testimony, NI-Gas had no reason to introduce additional evidence on this matter. An evidentiary hearing is needed

---

[2]Compare *Consolidated Coke Co. v. Commissioner of Internal Revenue* (1932), 25 B.T.A. 345, *aff'd* (3d Cir. 1934), 70 F.2d 446, 448 (secondary evidence held inadmissible where originals were intentionally destroyed with the knowledge that litigation was pending), with *Ocasio-Morales v. Fulton Machine Co.* (1973), 10 Ill. App. 3d 719, 295 N.E.2d 329 (duplicate blueprints were properly admitted where originals were destroyed in the ordinary course of business long before defendant was aware of the litigation).

to determine the precise circumstances under which the original customer service cards were destroyed. Accordingly, we vacate the trial court's order granting plaintiff a new trial and remand the cause for an evidentiary hearing in accordance with the views expressed herein.[3]

Vacated and remanded.

DOWNING, P.J., and HARTMAN, J., concur.

---

[3]We need not reach plaintiff's argument that Starasinic's testimony was inadmissible hearsay because the testimony was admitted solely for the purposes of impeaching plaintiff's witnesses and not as substantive evidence that NI-Gas had not been notified. (See *Smith v. Williams* (1975), 34 Ill. App. 3d 677, 681, 339 N.E.2d 10.) While at one point in his closing argument, counsel for NI-Gas referred to this testimony as substantive evidence that no telephone calls had been made, an objection to this comment was sustained and the jury was instructed to disregard it. We do not find that this isolated comment, standing alone, was so prejudicial that it would require a new trial. We note in this regard that the trial court's order granting a new trial specifically mentioned "the interaction of these two circumstances," *i.e.*, the failure to produce the original customer service cards and the reference in closing argument to Starasinic's testimony as substantive evidence.