2026 IL App (1st) 113033-U

SECOND DIVISION
March 31, 2026

No. 1-11-3033

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10MC44432 |
| | ) | |
| JOHN DOE, | ) | Honorable |
| | ) | Paula M. Daleo, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1 *Held*: The complainant's testimony was sufficient to establish defendant's guilt beyond a reasonable doubt of public indecency; and defendant was not prejudiced by his counsel's failure to object on the basis of the best evidence rule to testimony of instant messaging.

¶ 2    Following a bench trial, defendant John Doe was found guilty of public indecency and

sentenced to 12 months of supervision, 40 hours of community service, and $285 in fees and

costs. [1] On appeal, defendant asserts that the State failed to prove him guilty beyond a reasonable doubt of public indecency and that his trial counsel was ineffective for failing to object to introduction of instant messaging evidence on the basis of the best evidence rule. Defendant also challenges the amount of fees and costs assessed. We affirm.

¶ 3    The complainant, Shelly Daberitz, testified to an occurrence on June 8, 2010, at the Canadian Pacific Railroad office in Franklin Park where she had worked for 19 years. Defendant and Daberitz had worked together for about five years. That evening Daberitz worked as a train clerk on the second floor of the east side of the building where there were about four offices in an open area. Defendant was working that evening as a yardmaster, a position senior to her. His office was a step higher than the surrounding offices and was sectioned off by a glass wall; his desk was about 10 or 15 feet away from Daberitz's desk. At about 8:30 p.m. Daberitz entered defendant's office and asked him whether he had any additional work for her, and he replied that he did not. Defendant was facing toward his desk. Daberitz sat in a chair that was arm's length from defendant. Then defendant leaned back and raised his arms. His jeans were pulled down two or three inches and unzipped, exposing his penis, which was erect and hard. She did not notice whether his penis was circumcised. Daberitz said nothing; she got up, walked away, and returned to her own desk. She was "a little shocked and surprised that someone would do that in a work environment." A male yardmaster senior to defendant was on duty that night but no female workers superior to defendant were on duty, so Daberitz telephoned a female relative, a

---

[1] This case was originally filed on May 17, 2013, with Justices Howse and Palmer participating as panel members. Thereafter, this court granted defendant's February 24, 2026, request to withdraw the decision and refile with defendant's name changed to "John Doe."

cousin. The trial court sustained defense counsel's objection to the content of the telephone call on the basis of hearsay.

¶ 4     About five minutes after defendant exposed himself, he sent an interoffice text message to Daberitz. When the assistant State's Attorney asked what defendant's message said, defense counsel objected on the bases of hearsay and failure to tender the message in discovery. The assistant State's Attorney represented that the instant message was a statement against interest by defendant and stated he was agreeable to postpone the trial if the defense felt prejudiced by not being timely informed about the message. The court ordered a brief recess, after which defense counsel raised an additional objection on the basis of lack of foundation. Counsel argued there was no proof the message was sent from defendant "to Ms. Daberitz, no computer log, no record of where it was stored, how it was stored, how to authenticate it." The court ruled that it would sustain the defense objection "for this time" and, if the State could establish foundation, "we'll see if we can go into the substance."

¶ 5     Daberitz testified that each employee has a computer.  About 10 to 15 employees, including defendant, were on a list with whom she could send instant messages by way of a Microsoft Office messaging capability. The computer Daberitz was using that evening was not the computer she normally used.  The train clerk who had worked the shift before hers had logged into that computer and had not logged out. When Daberitz was sent an instant message, it would "pop up blinking" on her computer screen. If she accessed that screen, it would show the message, the person sending the message, and the time. Defendant had sent her such instant messages prior to the incident when he exposed himself.

¶ 6     The assistant State's Attorney attempted to elicit the content of the message Daberitz received five minutes after the incident. Defense counsel objected on the bases of lack of foundation and that the message may not have been intended for Daberitz since she had not logged into that computer. The court overruled the objection on the basis the State had laid a sufficient foundation.  When defense counsel repeated her objection based on discovery, the court reminded her that it had offered the defense ample time to address the matter, and the

court again offered to suspend the trial. Defense counsel replied, "No, your Honor, my client does want to go forward today, your Honor. We would have liked to have had this information beforehand, but we will proceed today." The court replied: "If after I hear this testimony I can give it whatever weight I choose to give it or disregard it totally, but for purposes of this trial I think there is sufficient foundation for this information and I'm going to overrule the defendant's objection."

¶ 7     Daberitz testified that the message from defendant five minutes after he exposed himself stated: "Did I overstep my boundaries." Daberitz was "very shocked that an employee and in a work environment would expose himself the way he did." A short time later, at about 10 p.m., Daberitz returned to defendant's office where she had a brief conversation with him and with Elizabeth Schuch, the yardmaster who was relieving him. Daberitz did not report the incident to Schuch, who was senior to Daberitz. Before Daberitz left work at 10 p.m., she did not tell "any of the bosses" what had happened. She had the next day off, and on the following morning she went to work between 6:30 and 7 a.m. She told her immediate boss, Dale Donahue, what had happened. Donahue referred her to his boss, Steve Cork, and told him about the incident. She spoke with the police later that morning.

¶ 8     When the assistant State's Attorney asked Daberitz whether she had had conversations with defendant prior to June 8 that were not about work, defense counsel again objected on the basis that they had not been tendered in discovery. The court asked defense counsel whether she had been taken by surprise so as to be unable to proceed. Counsel responded:  "[W]e can proceed. I would have appreciated if Counsel would have tendered me in discovery." The court again stated it would be willing to stop the trial and "take a recess for as long as you wish so that you can properly prepare." Defense counsel replied, "We can proceed, your Honor, that's fine."

¶ 9     One evening about two weeks prior to defendant exposing himself, he sent an instant message to Daberitz, asking her to meet him in an area of the building where no one else was working. Daberitz did not meet him. Over several weeks prior to the indecent exposure

incident, Daberitz received numerous other messages from defendant, telling her that her voice turned him on and commenting on her hair.

¶ 10 Daberitz denied that she ever put her fingernails on the back of defendant's neck or placed her hands on his side at his waist, but she admitted she had patted defendant on his shoulder. Daberitz's husband also worked at Canadian Pacific and knew defendant. Daberitz was unaware that her husband and defendant had had disagreements in the past, and she did not know whether her husband liked defendant.

¶ 11 After the State rested and defendant's motion for a finding of not guilty was denied, defendant testified in his own behalf. He was 31 years old and the father of five children. As of June 8, 2010, he had been employed by Canadian Pacific for six years, but his employment was terminated as a result of the incident in question. Shelly Daberitz was a train clerk who reported to defendant. She normally worked a different shift but had been working with defendant for two months in relief of an absent employee. Defendant had a very friendly relationship with Daberitz. They got along well and had certain things in common, such as having children the same age. He denied making statements to Daberitz about her hair or voice and denied inviting her to the west end of the building. Defendant knew Daberitz's husband. They had no personal relationship, but "work-wise" they had confrontations or disagreements "about the way to do things."

¶ 12 Defendant's office was a small glass enclosure extending over the yard area. The yardmaster occupied a similar enclosure next to defendant, with a glass partition between the two of them. Defendant's immediate supervisor was behind a glass partition, behind defendant. Daberitz worked in an open area outside defendant's office. Defendant's office environment was hectic, with noise from the phone, radio and four computer screens on his desk. To get defendant's attention, Daberitz would sometimes rub her fingernails on the back of his neck to let him know she was there, or she would poke him in the sides with her fingers, knowing he was ticklish. When defendant received an instant message from Daberitz, it would pop up on one of his computer screens.

¶ 13    On June 8, defendant began his shift at 1:50 p.m. as a general yardmaster.  Shelly Daberitz worked the same shift that day. On that day, defendant was wearing a buttoned shirt, a pair of khakis with a belt, undershirt, boxer shorts, and cowboy boots.  His shirt was tucked in and his pants were not unfastened at any time that day when he was in his office. Defendant denied he exposed his penis to Daberitz. He denied sending Daberitz an instant message saying, "Did I over step my boundaries." He had done nothing that day to give him reason to send such a message.

¶ 14    Elizabeth Schuch testified for the defense that she was defendant's co-worker at Canadian Pacific on June 8, 2010. When she arrived at work at about 9:50 p.m., she heard Daberitz laughing but did not know with whom she was speaking. Schuch got a cup of tea and then went to defendant's office, where she saw Daberitz and defendant conversing. Defendant was sitting and Daberitz was standing next to him. Their conversation lasted about 20 seconds and then Daberitz left defendant's office. There was nothing unusual about Daberitz's demeanor; she was "just normal," "like she always is."

¶ 15    In closing argument, defense counsel argued that the prosecution against defendant arose after Daberitz's husband learned of innuendos exchanged between his wife and defendant; that he confronted his wife; and that she fabricated the account of defendant exposing himself to make her appear "like a poor traumatized victim and a way to get rid of" defendant.

¶ 16    Following closing arguments, the court spread its findings of record. Addressing defense counsel's closing argument, that the criminal complaint against defendant was the result of Daberitz's husband learning of a relationship between his wife and defendant, the court observed: "There's no evidence in the record that any of that occurred." The court found that Daberitz and defendant "had a congenial working relationship" and "they often joked around."  The court noted testimony that defendant had indicated to Daberitz "that he was somewhat attracted to her" "with a prior invitation to meet in an area where [other] workers would not be in the office."

"But really the crux of this case resolves [*sic*] around the actual incident itself. So let's look at that. The complaining witness walks in and talks to the defendant about work, at which time he is sitting behind a desk where there are computers, phones, et cetera. He leans back in his chair, and according to her testimony, his shirt lifts and she sees his exposed penis. Her description is that it's not flaccid. That it's erect and hard.

From that testimony, it's reasonable to infer that the defendant was aroused, and that is what the element of the crime requires. There's no reason given at this point why defendant might be sitting behind his desk with his penis exposed, or potentially being exposed to anybody that he chose to show it to it [*sic*], but nonetheless, I have no reason to disbelieve what the complaining witness testified to. The victim has -- or the complaining witness alleged that – or stated that the relationship between the two had always been a friendly relationship before, not that there was any confrontation between the two, not that the defendant threatened her with loss of job or any of those kinds of things.

\*\*\*

So what is the motive for the complaining witness to lie about this incident? I see none. On the other hand, of course, the defendant does have a motive since he is charged with this incident. I don't -- I can't begin to get into the defendant's head and try to determine why he would jeopardize his job and family by exposing himself, but nonetheless, I don't have the reason to disbelieve the complaining witness. I find her credible and, therefore, I must find the defendant guilty beyond a reasonable doubt of public indecency."

¶ 17    At the close of the subsequent hearing on defendant's amended motion for new trial, the court observed that, in ruling at trial on the content of the instant messages that defense counsel had not timely been tendered: "The court also indicated that after the testimony was heard that it was for the trier of facts, meaning me, to decide what weight to be given to the testimony or

to disregard it completely." The court also noted that defendant placed his credibility on the line by taking the witness stand and recalled: "I found his version of this incident to be incredible." The court denied defendant's motion for new trial.

¶ 18    The court sentenced defendant to 12 months of court supervision with the requirement that defendant have no contact with the complaining witness, 40 hours of community service, and $285 in fines and court costs.

¶ 19    On appeal, defendant contends that he was not proven guilty beyond a doubt and that his conviction should be reversed because: (1) the testimony of the complaining witness was uncorroborated, incredible, and impeached; and (2) the trial court failed to afford defendant the presumption of innocence.

¶ 20    When presented with a claim of insufficiency of the evidence, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *People v. Leonard*, 377 Ill. App. 3d 399, 403 (2007). On review, a conviction will not be set aside on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there remains a reasonable doubt as to the defendant's guilt. *People v. Lee*, 376 Ill. App. 3d 951, 955 (2007).

¶ 21    We reject defendant's contention that the testimony of Daberitz was uncorroborated, incredible, and impeached. The testimony of a complainant need be neither corroborated nor unequivocal. *People v. Doll*, 371 Ill. App. 3d 1131, 1138 (2007). It is within the province of the trier of fact to determine the credibility and weight of each witness's testimony. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). In a bench trial, as here, it is for the trial judge to determine the credibility of witnesses, weigh evidence, draw reasonable inferences therefrom, and resolve any conflicts in the evidence. *People v. Little*, 322 Ill. App. 3d 607, 618 (2001). "Because the trial judge is in a superior position to weigh the evidence and decide on the credibility of the witnesses, we may not reverse the judgment merely because we might have reached a different conclusion." *People v. Love*, 404 Ill. App. 3d 784, 787 (2010). It is not the

function of this court to reweigh the evidence or retry the defendant. *People v. Leak*, 398 Ill. App. 3d 798, 818 (2010).

¶ 22     Defendant's contention that Daberitz was impeached by the testimony of Elizabeth Schuch is not supported by the record. Defendant contends Daberitz testified the reason she telephoned her female cousin after the incident was that there were no females in position of authority on duty that night, and that this testimony was impeached by that of Schuch who was present that night. Defendant's claim is belied by the trial testimony. Daberitz stated she was "totally shocked" at what she had just seen and telephoned her female cousin because there was no female supervisor on duty that night superior in rank to defendant. Schuch, who did not arrive until 9:50 p.m., was not at the office when Daberitz telephoned her cousin shortly after the 8:30 incident. Moreover, there was no evidence that Schuch was senior to defendant. Her testimony indicated that she was at the same level of seniority as defendant and relieved him that night as a yardmaster.

¶ 23     In addition, defendant notes that the State failed to call Daberitz's cousin as a witness, implying a permissible inference that the cousin's testimony would have been unfavorable to its case. However, the defense had objected on hearsay grounds to testimony about the content of Daberitz's telephone conversation with her cousin.  After the State represented that it was offering the conversation only to show Daberitz's state of mind, not for the truth of the matter asserted, the court ruled that the substance of the conversation would not be allowed in evidence. Consequently, there would have been no basis to call the cousin as a State witness.

¶ 24     Defendant asserts that Daberitz's credibility was undermined by Schuch's testimony that when she arrived at work to relieve defendant, she heard Daberitz "laughing, acting normally, and closely conversing with" defendant. The trial transcript reveals, however, that Schuch testified she heard Daberitz laughing but did not know with whom Daberitz was speaking at that time. Later, when Schuch went to defendant's office, she saw Daberitz and defendant conversing, but the conversation lasted only about 20 seconds and then Daberitz left defendant's office.

¶ 25 Defendant also maintains that Daberitz's two-day delay in reporting the incident to her superiors casts doubt on her credibility. The trial record shows that the incident with defendant occurred about 1½ hours before Daberitz left work, that she did not work the next day, and that on the following day she went to work at about 6:30 a.m. and immediately reported the incident to her supervisor. Daberitz was shocked by defendant's conduct in exposing himself, but her hesitancy in reporting the incident to her supervisor is sufficiently explained by the fact that she and defendant previously had a congenial working relationship for many years and that to report the incident to her superiors could (and did) result in defendant's termination. The trial court was aware of the delay in reporting the matter, and the delay was but one factor in the court's assessment of Daberitz's credibility. *People v. Bowen*, 241 Ill. App. 3d 608, 620 (1993). Under the circumstances, we do not believe the relatively short delay in reporting the incident undermined Daberitz's credibility. Defendant's claim that Daberitz's version of what had occurred in defendant's office "contradicted human experience" was also a factor for the trial court to consider in evaluating the credibility of the witnesses. *Id.* at 620-21.

¶ 26 Defendant further contends that the trial court compromised the presumption of innocence to which he was entitled. Defendant bases this contention on the trial court's statement that Daberitz had no motive to lie, whereas the fact defendant was charged with a crime was a sufficient motive for him to lie. Viewing the record in its entirety, however, it is apparent the trial court carefully considered the relative credibility of both Daberitz and defendant before concluding that Daberitz was the more credible witness. When a defendant testifies, the trier of fact is not required to believe his testimony. *People v. Larson*, 379 Ill. App. 3d 642, 655 (2008). Here, the court stated specifically that it found defendant's version of the incident to be incredible. The trial court's comment about a motive to lie came after the court had heard all of the evidence, and it followed defense counsel's closing argument in which she posited that Daberitz had a motive to fabricate the incident because her husband allegedly confronted her after learning about innuendos exchanged between her and defendant. The trial court's findings included its specific rejection of the defense motive-to-lie theory on the basis

that there was no testimony whatever to support that theory. We fail to understand how defendant's right to the presumption of innocence could be violated in the trial court's presentation of its findings. The law presumes the accused is innocent until he is proven guilty beyond a reasonable doubt. *People v. Carbajal*, 2013 IL App (2d) 111018, ¶ 34. After defendant's trial had ended, and the trial court was presenting its findings, the presumption had ceased. A review of the trial court's findings in their entirety do not support defendant's claim that he was found guilty merely because he was charged with a crime or that he had a responsibility to prove his innocence.

¶ 27    Viewing the evidence presented at trial in the light most favorable to the State, we conclude it was not so improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt.

¶ 28    Defendant's second assignment of error is that his trial counsel was ineffective for failing to challenge Daberitz's instant messaging testimony on the basis of the best evidence rule.

¶ 29    A defendant's claim of ineffective assistance of counsel is guided by the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under that test, a defendant must prove both that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Id.*; *People v. Colon*, 225 Ill. 2d 125, 135 (2007). The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18 (2010).

¶ 30    Defendant has not demonstrated that his trial counsel's performance was deficient, as he presents no authority to support his claim that the best evidence rule applies to instant messaging. His only citation to Illinois authority references *People v. Downin*, 357 Ill. App. 3d 193 (2005), which involved printed emails. We cannot deem defense counsel to have been ineffective for failing to raise an objection that has not yet found a basis in the law. See *People v. Chatman*, 357 Ill. App. 3d 695, 700 (2005). However, defense counsel did object at trial on several other grounds, including the lack of foundation and authenticity. On appeal, defendant

11

does not challenge the instant messaging testimony on the bases of lack of foundation or authentication.

¶ 31   Our courts have long held that the best evidence rule applies to written documents. *People v. Bowman*, 95 Ill. App. 3d 1137, 1141-43 (1981). The *Bowman* court recognized that the Federal Rules of Evidence allowed the admission in evidence of a duplicate to the same extent as an original unless (1) a genuine question exists as to the authenticity of the original, or (2) it would be unfair to admit the duplicate as a substitute for the original. *Id.* at 1142-43. In *Law Offices of Colleen M. McLaughlin v. First Star Financial Corp.*, 2011 IL App (1st) 101849, ¶ 30, we noted that, "[a]lthough there are very few citations to *Bowman* in subsequent authority, the rule is part of our common law evidentiary rules," which applied at the time of defendant's trial in 2010. The rule set forth in *Bowman* and in the Federal Rules of Evidence was recently codified in the Illinois Rules of Evidence. See Ill. R. Evid. 1003 (eff. Jan. 1, 2011), which went into effect some weeks after defendant's trial in December 2010. In the instant case, defendant has failed to demonstrate in what manner his trial counsel failed to challenge the instant messaging on the basis of the evidentiary rules in effect at the time of his trial.

¶ 32   The State asserts that defense counsel's decision as to the grounds on which to challenge the instant messages was one of trial strategy. Counsel cannot be deemed ineffective for an act or omission that is a matter of trial tactics. As a general rule, matters of trial strategy are immune from claims of ineffective assistance of counsel. *People v. Martinez*, 348 Ill. App. 3d 521, 537 (2004). The instant messages here were alleged to have originated in defendant's own computer. Defense counsel had challenged Daberitz's testimony about the instant messaging on several grounds, including the ground that the State had shown "no computer log, no record of where it was stored, how it was stored, how to authenticate it." For defense counsel to have gone further and demanded, or conducted, an investigation as to the existence or source of the instant messaging, the possibility existed that such an investigation may have established that the messages had in fact originated from defendant's computer, proving

disastrous to the defense. Consequently, counsel's failure to investigate whether evidence of the messaging existed may be deemed to have been a matter of trial strategy for which she cannot be held to have been ineffective.

¶ 33    Even if defense counsel's performance might be deemed deficient in failing to challenge the instant messaging testimony on the basis of the best evidence rule, defendant cannot satisfy the prejudice prong of *Strickland* where there is no indication the trial court depended on the instant messaging testimony in concluding that defendant was guilty. To establish error under *Strickland*, defendant was required to show there was a reasonable probability that, but for defense counsel's error, the outcome of the proceedings would have been different. *People v. Sanchez*, 404 Ill. App. 3d 15, 19 (2010), citing *Strickland*, 466 U.S. at 694.

¶ 34    When the trial court is the trier of fact, a reviewing court presumes that the trial court considered only admissible evidence and disregarded inadmissible evidence in reaching its conclusion. *People v. Naylor*, 229 Ill. 2d 584, 603 (2008).  That presumption, however, " 'may be rebutted where the record affirmatively shows the contrary.' " *Naylor*, 229 Ill. 2d at 603-04, citing *People v. Gilbert*, 68 Ill. 2d 252, 258-59 (1977). Here, the presumption obtains where there is no evidence to the contrary. The trial court stated that while it was overruling defense counsel's objection to Daberitz's instant messaging testimony, it was not necessarily considering the testimony on the issue of guilt or innocence. In fact, the court specifically stated in its findings that it considered only the act itself: "The crux of this case resolves [*sic*] around the actual incident itself." The court based its judgment on its finding that Daberitz's testimony about the incident was credible and defendant was not credible. The court made no reference to the instant message that Daberitz testified she received from defendant five minutes after he exposed himself to her.

¶ 35    We conclude that defendant has failed to establish that his trial counsel was ineffective under either prong of the *Strickland* test.

¶ 36    Defendant also contends that a math error on the written order of court costs and fees resulted in an erroneous total of $285. In support of his argument, defendant has listed various

costs and fees assessed on the order and arrived at a total of $260. Defendant has failed to include in his summary of the charges the $25 court system fee for a finding of guilty or imposition of supervision for a class A misdemeanor. Consequently, we affirm that portion of the court's sentencing order requiring defendant to pay $285 in costs and fees.

¶ 37    For the reasons stated above, we affirm the judgment of the trial court.

¶ 38    Affirmed.